UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KAREN D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cv-00871-TWP-TAB |
| | ) | |
| ANDREW M. SAUL, Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff Karen D.[1] requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "SSA"), denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act.  For the following reasons, the Court **affirms** the decision of the Commissioner.

I.     **PROCEDURAL BACKGROUND**

On August 14, 2015, Karen D. protectively filed her application for DIB, alleging a disability onset date of May 26, 2013.  (Filing No. 5-2 at 19.)  Her application was initially denied on September 26, 2015, (Filing No. 5-4 at 4), and upon reconsideration on November 19, 2015, (Filing No. 5-4 at 14).  Administrative Law Judge Kevin Walker (the "ALJ") conducted a hearing on August 18, 2017, at which Karen D., represented by counsel, and a vocational expert ("VE"), appeared and testified.  (Filing No. 5-2 at 37-63.)  The ALJ issued a decision on February 27, 2018, concluding that Karen D. was not entitled to receive benefits.  (Filing No. 5-2 at 16.)  The Appeals

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

Council denied review on January 7, 2019.  (Filing No. 5-2 at 2.)  On March 1, 2019, Karen D. timely filed this civil action, asking the Court pursuant to 42 U.S.C. § 405(g) to review the final decision of the Commissioner denying her benefits.  (Filing No. 1.)

## II.    STANDARD OF REVIEW

Under the Social Security Act, a claimant may be entitled to benefits only after she establishes that she is disabled.  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience.  42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled.  At step one, if the claimant is engaged in substantial gainful activity, she is not disabled despite her medical condition and other factors.  20 C.F.R. § 404.1520(a)(4)(i).  At step two, if the claimant does not have a "severe" impairment that also meets the durational requirement, she is not disabled.  20 C.F.R. § 404.1520(a)(4)(ii).  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then her residual functional capacity will be assessed and used for the fourth and fifth steps. *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v). Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); Social Security Ruling ("SSR") 96-8p). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work, given her RFC and considering her age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if she can perform any other work in the relevant economy.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft*, 539 F.3d at 678, this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

3

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits.  *Barnett*, 381 F.3d at 668.  When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy.  *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).  An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion."  *Id*. (citation omitted).

### III.    FACTUAL BACKGROUND

Karen D. was 43 years of age at the time she alleged her disability began.  (*See* Filing No. 5-6 at 2.)  She alleged that she could no longer work because of multiple sclerosis, depression, difficulty walking, standing, sitting, using her hands, and always being sleepy.  (Filing No. 5-7 at 6.)  She has completed an eighteen-month college program in travel management.  (Filing No. 5-2 at 42.)  Karen D. has worked as a school cook and teacher's aide.[2]  (Filing No. 5-7 at 7.)

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Karen D. was not disabled.  (Filing No. 5-2 at 28-29.)  The ALJ found that Karen D. last met the insured status requirements of the Social Security Act on December 31, 2016 (her date last insured or "DLI").[3]  (Filing No. 5-2 at 21.)  At step one, the ALJ found that Karen D. had not engaged in substantial gainful activity[4] since May 26, 2013,

---

[2] The relevant evidence of record is amply set forth in the parties' briefs, as well as the ALJ's decision and need not be repeated here.  Specific facts relevant to the Court's disposition of this case are discussed below.

[3] Karen D. must prove the onset of disability on or before her DLI to be eligible for DIB.  *See Shideler v. Astrue*, 688 F.3d 308, 311 (7th Cir. 2012); *see also* 20 C.F.R. § 404.131.  The ALJ's subsequent findings were limited to the period at issue, beginning with the alleged disability onset date, May 26, 2013, through the DLI.  (*See, e.g.*, Filing No. 5-2 at 21.)

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 404.1572(a).

the alleged onset date.  *Id*.  At step two, the ALJ found that Karen D.'s severe impairments were

multiple sclerosis and obesity.  *Id*.  At step three, the ALJ found that she did not have an impairment

or combination of impairments that met or medically equaled the severity of one of the listed

impairments.  (Filing No. 5-2 at 23.)  After step three but before step four, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that, through
> the date last insured, the claimant had the residual functional capacity to perform
> sedentary work as defined in 20 CFR 404.1567(a) except she can lift and carry ten
> pounds occasionally and less than ten pounds frequently, and push and pull
> unlimited except for the weights indicated.  She can stand up to fifteen minutes at
> one time and up two hours in an eight-hour workday, she can walk up to two hours
> and sit for eight hours in an eight hour workday.  She can frequently reach, handle,
> finger and feel bilaterally.  She can occasionally climb ramps and stairs but can
> never climb ladders, ropes or scaffolds.  She can occasionally balance, stoop, kneel,
> crouch and crawl.  She can have no exposure to concentrated wetness or vibration,
> and no exposure to unprotected heights or hazardous machinery.  She cannot
> operate a commercial motor vehicle, but she can occasionally operate foot controls
> bilaterally.

(Filing No. 5-2 at 23-24.)  At step four, considering Karen D.'s RFC and the VE's testimony, the

ALJ concluded that Karen D. was incapable of performing her past relevant work as a cafeteria

cook and cafeteria attendant.  (Filing No. 5-2 at 27.)  At step five, considering Karen D.'s age,

education, work experience, and RFC, the ALJ concluded that Karen D. could have performed

other work with jobs that existed in significant numbers in the national economy in representative

occupations, such as a call out operator, telephone order clerk, and addresser.  (Filing No. 5-2 at

27-28.)

## IV.   **DISCUSSION**

Karen D. raises two assignments of error, that the ALJ failed to: (1) present a complete

picture of Karen D.'s RFC when getting testimony from the VE, and (2) complete a function-by-

function assessment of Karen D.'s RFC, including by not making a determination whether the use

of a cane and wheelchair were medically necessary.  The Court will address the issues in turn.

A.    **RFC and Fatigue**

Karen D. contends that the ALJ failed to address her subjective reports of symptoms related to her multiple sclerosis, particularly severe fatigue, sleepiness, drowsiness, decreased energy, and the need to take a daily nap. (Filing No. 7 at 18.)  She asserts that the ALJ failed to present a complete picture of her RFC when getting testimony from the VE in response to hypotheticals because relevant limitations were not included to account for her symptoms.  (Filing No. 7 at 19.)

Regardless of the basis, a hypothetical question posed by the ALJ to the VE "must fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record." *Herron v. Shalala*, 19 F.3d 329, 337 (7th Cir. 1994); *Indoranto v. Barnhart,* 374 F.3d 470, 473-74 (7th Cir. 2004) ("If the ALJ relies on testimony from a vocational expert, the hypothetical question he poses to the VE must incorporate all of the claimant's limitations supported by medical evidence in the record."); SSR 96-5p (S.S.A. July 2, 1996), 1996 WL 374183, at *5 (RFC assessment "is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence"); 20 C.F.R. § 404.1545. However, the ALJ need incorporate into hypotheticals only the impairments and limitations that the he finds credible. *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009).  When assertions regarding symptoms cannot be verified by objective medical evidence alone, the ALJ must make a credibility determination concerning the claimant's subjective reports. *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016).  As noted in the standard of review section, an ALJ's credibility evaluation is given considerable deference.  Reviewing courts examine whether a credibility determination was reasoned and supported; only when an ALJ's decision "lacks any explanation or support . . . will [the Court] declare it to be 'patently wrong.'" *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008).  "Credibility determinations will not be overturned unless they are clearly

6

incorrect.  As long as the ALJ's decision is supported by substantial and convincing evidence, it deserves this court's deference."  *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) (citations omitted).

When describing her disability to the SSA and the psychological consultative examiner, Karen D. reported the need to nap during the day.  (Filing No. 5-7 at 22; Filing No. 5-15 at 41.) The ALJ noted that Karen D. alleged disability, in part, because of fatigue related to her multiple sclerosis.  (Filing No. 5-2 at 24.)

However, the ALJ concluded that Karen D.'s statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  *Id.*  The ALJ explained, in part, that Karen D. "admitted on several occasions that she had good tolerance of treatment with good symptoms control on Tecfidera and Baclofen, and that she was stable with ability to do daily activities and enjoy family, friends and church activities (Ex. 18F/4, 8, 12; Ex. 20F/8)."  (Filing No. 5-2 at 25.)  The Seventh Circuit has held that the ALJ may consider inconsistencies between the severity of symptoms reported in connection with the disability claim and those reported while seeking treatment.  *See Sienkiewicz v. Barnhart*, 409 F.3d 798, 803-04 (7th Cir. 2005).  An ALJ is also permitted to consider the effectiveness of treatment in making his credibility determination.  20 C.F.R. § 404.1529(c)(3)(iv); *see Lambert v. Berryhill*, 896 F.3d 768, 777 (7th Cir. 2018) (The ALJ's credibility determination relying on "good response" to treatment was not upheld because the finding was inconsistent with the record.).

As quoted above, the ALJ supported his explanation with citation to the record. Concerning fatigue, on August 23, 2016, Karen D.'s treating provider noted:

> By report there is good compliance with treatment, good tolerance of treatment and good symptom control.  Patient c/o mild fatigue.  Reports her husband thinks she

> sleeps longer than she should each night (goes to bed at 10p and wakes at 8-9a).
> Reports she only sleeps this long because she no longer works and her body is used
> to it.  Reports once she gets up she feels well and able to get some things done
> around the house.

([Filing No. 5-17 at 6](#).)  The need to sleep longer at night is not vocationally relevant because it would not interfere with her ability to perform a full-time work schedule.  When asked to self-assess the presence of specific symptoms during the last two weeks, Karen D. also indicated "not at all" for "[f]eeling tired and having little energy."  ([Filing No. 5-17 at 10](#).)  She also reported staying "active with friends, family and church activities."  ([Filing No. 5-17 at 12](#).)  On June 22, 2017, Karen D.'s treating neurologist for her multiple sclerosis noted "[t]he nine months since last seen have been 'fine,' with nothing suggesting attacks as has been true since starting Tecfidera for sure, but still a sense of overall low-grade progression."  ([Filing No. 5-18 at 9](#).)  The specialist's impression at that time was "[r]elapsing-remitting multiple sclerosis, with a relatively stabilized course and examination on Tecfidera for the last three years.  I think the Tecfidera is doing well by her and is taking away the relapsing quality, but there is still some insidious low-grade progression with slightly slower walking speed indicating progression."  *Id*.  The record evidence cited by the ALJ provided substantial support for his relevant credibility finding that Karen D. had reported to her providers that she had good response to treatment and good control of her fatigue symptoms.

Karen D. also contends that the ALJ failed to appreciate that the activities of daily living he found supportive of his credibility finding could be performed at Karen D.'s own pace and according to her own schedule.  ([Filing No. 7 at 20-21](#).)  The Seventh Circuit has "criticized ALJs for equating activities of daily living with an ability to work."  *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (citations omitted).  However, an ALJ may consider the claimant's "description of [her] daily activities in assessing whether [her] testimony about the effects of [her] impairments

was credible or exaggerated." *Id.* (citing 20 C.F.R. § 404.1529(c)(3)(i) (explaining that agency will consider daily activities in evaluating severity of claimant's symptoms); *Pepper v. Colvin,* 712 F.3d 351, 369 (7th Cir. 2013) (agreeing with ALJ's reasoning that claimant's daily activities undermined her testimony about extent of her symptoms). Here, the ALJ explained:

> Regarding the claimant's activities of daily living, as noted above, she is able to attend to her own personal hygiene and grooming. She is able to prepare meals, perform household chores with breaks, shop, drive, and handle her financial affairs. In addition, she enjoys leisurely activities that include reading, watching television, playing games on the computer, and going out shopping and to the movies with family and friends. Accordingly, I find her daily activities are consistent with the ability to perform work according to the above residual functional capacity.

(Filing No. 5-2 at 26 (citations omitted).) Taken literally, the ALJ's conclusion appears to equate Karen D.'s ability to perform activities of daily living with the ability to maintain the RFC assessed by the ALJ. Such a conclusion is contrary to law. As the ALJ notes, Karen D.'s reported ability to perform such activities was with breaks, which may exceed what is tolerated in the competitive economy.

However, the Seventh Circuit has held that the ALJ's credibility determination need not be perfect to survive review according to the deferential standard. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (upholding the ALJ's credibility determination despite finding "deficiencies" such that there was "some merit in two out of three of McKinzey's attacks" because the ALJ had cited to record evidence that suggested the claimant had exaggerated symptoms and limitations). As explained above, the ALJ relied on other relevant considerations and supported his conclusions with citation to substantial evidence.

Moreover, beyond her reported need to take naps—which did not appear to be supported longitudinally based on her response to treatment[5]—Karen D. has not developed how her fatigue would have specifically affected her ability to work.  *See Krell v. Saul*, 931 F.3d 582, 586 n.1 (7th Cir. 2019) (perfunctory and undeveloped arguments are waived).  Furthermore, there was no medical source statement assessing specific functional limitations, relevant or otherwise, which conflicted with the ALJ's RFC finding.  The Seventh Circuit has held that "[w]hen no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error."  *Dudley v. Berryhill*, 773 F. App'x 838, 843 (7th Cir. 2019) (citing *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004)).

Accordingly, for all the reasons above, the Court does not find that the ALJ's credibility determination was patently wrong.  The ALJ did not err in assessing an RFC that included only the limitations that he found credible concerning Karen D.'s fatigue.

**B.    Cane and Wheelchair**

Karen D.'s second assignment of error again attacks the ALJ's RFC finding, this time arguing that the ALJ did not: (1) adequately explain his findings by use of mandated function-by-function assessment, (Filing No. 7 at 22), (2) account for durational and distance limitations with Karen D.'s ability to walk when assessing her ability to perform a reduced range of work at the sedentary exertional level, (Filing No. 7 at 24), and (3) make a finding regarding the medical necessity of Karen D.'s use of a cane or wheelchair, (Filing No. 7 at 24-25).

Much of the same analysis detailed by the Court along with the first assignment of error also applies to the second assignment of error.  Again, there was no medical opinion that assessed

---

[5] In addition to the evidence cited by the ALJ, detailed above, concerning the effects of fatigue on Karen D.'s ability to function during the day, the Court notes that when she was asked to describe her typical day for the ALJ during the hearing, Karen D. did not mention the need to nap.  (Filing No. 5-2 at 52-54.)

specific functional limitations that conflicted with the ALJ's relevant RFC findings concerning Karen D.'s ability to walk.  The ALJ was again not required to include limitations in the RFC that he did not find credible.  When asked during the hearing what precluded her from working, Karen D. testified that she had reduced stamina and could not stand for long periods, (Filing No. 5-2 at 49), which she later clarified to mean more than fifteen minutes, (Filing No. 5-2 at 52).  The ALJ credited such a limitation by including it in his RFC finding.

The ALJ also cited substantial evidence that supported his implied RFC finding that no further limitations with Karen D.'s ability to walk were demonstrated.  The ALJ explained that "physical therapy exams noted she was doing well with walking and stability and she was discharged having completed essentially all goals." (Filing No. 5-2 at 25 (citation omitted).)  On July 7, 2015, Karen D. reported to her physical therapist that she was doing "well and ha[d] the confidence to walk the parking lot and now into [W]almart to shop." (Filing No. 5-12 at 32.)  She reported no setbacks in the last month without physical therapy. *Id*.  The discharge summary stated that she had "approximated the goals as established," specifically her goals to safely and independently ascend and descend stairs, get in and out of her car, rise from a seated position, and ambulate across uneven surfaces in her home were noted to have been completed. *Id*.  The ALJ also noted that at the consultative examination in September 2015, Karen D. could "walk without assistive device down a hall, albeit at a slower pace, with a brace on the right knee due to right foot drop." (Filing No. 5-2 at 25 (citation omitted).)  Regarding Karen D., the consultative examiner observed:

> She can walk without a cane down the hall (46') and with the cane she walks at a quicker pace.  She has a true motion 4[-]point cane.  When she walks[,] she keeps her knees straight and does not pick her feet up off the floor over an [sic] 1".  She does wear a brace on her right knee due to dropped toes.

(Filing No. 5-15 at 38.)  As detailed above, Karen D. reported good control of her symptoms with her prescribed medication for her multiple sclerosis and increased tolerance with performance of activities.

The ALJ did not separately address each of the seven exertional abilities.  The Seventh Circuit has very recently joined "sister courts, however, in concluding that a decision lacking a seven-part function-by-function written account of the claimant's exertional capacity does not necessarily require remand."  *Jeske v. Saul*, 955 F.3d 583, 596 (7th Cir. 2020) (citing *Mascio v. Colvin*, 780 F.3d 632, 635-36 (4th Cir. 2015); *Hendron v. Colvin*, 767 F.3d 951, 956-57 (10th Cir. 2014); *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Depover v. Barnhart*, 349 F.3d 563, 567-68 (8th Cir. 2003)).  The Seventh Circuit explained that the role of reviewing courts is to verify that the ALJ's decision is supported by substantial evidence and addresses significant evidence and the functional limitations that such evidence supports.  *Jeske*, 955 F.3d at 596.  In the right set of circumstances, it can even be inferred without any discussion in the written decision that the ALJ did not credit a functional limitation based on a lack of evidentiary support.  *Id.*  However, the lack of explicit discussion does always run the risk that a reviewing court will conclude that a functional limitation was not considered.  *Id.*

Here, as detailed above, the ALJ mentioned that Karen D. had reported the use of a single-hand quad cane and that she had a slower walking pace when she did not use a cane.  However, she demonstrated some ability to walk without a cane.  Her pace increased with the cane and she was able to walk 46 feet with the cane during the consultative examination.  The ALJ also noted that Karen D. "reported occasional use of a cane and/or wheelchair when places are a far distance and she wears a brace for drop foot, particularly when out walking a lot about three or four times

a week." (Filing No. 5-2 at 24.)  The Court does not conclude that the ALJ failed to consider Karen

D.'s reported need to use ambulatory aids or her limitations with pace and stamina when walking.

The ALJ did not directly address whether a cane or wheelchair was medically required,

despite finding no relevant limitation in his RFC finding.  The SSA's own guidance provides that

an "adjudicator must always consider the particular facts of a case" regarding the use of hand-held

assistive devices.  SSR 96-9p (S.S.A. July 2, 1996), 1996 WL 374185, at *7.  The ruling explains:

> To find that a hand-held assistive device is medically required, there must be
> medical documentation establishing the need for a hand-held assistive device to aid
> in walking or standing, and describing the circumstances for which it is needed (i.e.,
> whether all the time, periodically, or only in certain situations; distance and terrain;
> and any other relevant information).

*Id*.; *see* 20 C.F.R. § 402.35(b)(1) ("Social Security Rulings are binding on all components of the

Social Security Administration.").  Before addressing the lack of any consistent standard among

the circuits as to the precise requirements of the medical documentation necessitated under the

ruling, the Seventh Circuit has described the difference between evidence of use and necessity in

*Tripp v. Astrue*, 489 F. App'x 951, 955 (7th Cir. 2012) (emphasis in original):

> In our view, the record adequately supports the finding of no medical necessity.
> The record is replete with references to Tripp's use of "crutches," "a crutch," or "a
> cane," but these mentions are traceable to his self-reports and to physicians'
> observations that he *presented* with an assistive device. Even the statement of Dr.
> Motiani, who in his letter to the state agency asserted matter-of-factly that Tripp
> "does need a crutch," lacks the specificity necessary to determine whether this was
> the doctor's *medical* opinion or merely a restatement of what was told to him by
> Tripp.

The ALJ's failure to explicitly address whether Karen D.'s hand-held quad-point cane was

medically required is error in this case.  As detailed above, the ALJ cited some evidence that Karen

D. was able to progress with modest, independent ambulatory goals and she also demonstrated the

ability to walk for some distance without the use of a cane.  However, it is problematic that the

decision nor record, including most notably the testimony of the VE, did not explore the

ramifications of her reduced stamina and pace if she was not using a cane for ambulation in performance of the sedentary exertional jobs that the ALJ relied upon to deny her claim.

However, the Court finds that error to be harmless.  The Seventh Circuit has explained the standard by which error can be ignored by the Court:

> But administrative error may be harmless: we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result.  *Spiva v. Astrue,* 628 F.3d 346, 353 (7th Cir.2010).  That would be a waste of time and resources for both the Commissioner and the claimant.  Thus, we look at the evidence in the record to see if we can predict with great confidence what the result on remand will be.  We note (yet again, see *Spiva,* 628 F.3d at 353 and the critical discussion therein) that the harmless error standard is not, as the Commissioner and district court seem to believe, an exercise in rationalizing the ALJ's decision and substituting our own hypothetical explanations for the ALJ's inadequate articulation.  We have already concluded that the ALJ erred.  The question before us is now prospective—can we say with great confidence what the ALJ would do on remand—rather than retrospective.

*McKinzey*, 641 F.3d at 892.  Here, the VE testified that an individual that needed to use a cane to ambulate would still be able to perform the representative occupations utilized by the ALJ at step five.  (Filing No. 5-2 at 61.)

The Court does not find any harmful error raised by Karen D.  The ALJ also did not directly address Karen D.'s potential need to use a wheelchair.  However, the Court finds no evidence that the use of one would be needed to perform the representative occupations as a call out operator, telephone quotation clerk, and addresser.  Karen D. used a wheelchair to get to her hearing and was asked by the ALJ about her need to use it.  (Filing No. 5-2 at 54.)  Karen D. testified that she was prescribed the wheelchair in 2015 after a fall but that she only used it when she needed to walk a "long distance," did not know how far she would need to walk, or it was a "really hot day." (Filing No. 5-2 at 54-55.)  The VE testified that the use of a wheelchair would be an accommodation for the jobs specified that would not be within competitive tolerances in the workforce.  (Filing No. 5-2 at 61.)  However, there is no indication that those jobs would require

walking long distances or work exposed to high temperatures.  Karen D.'s representative did not develop the record to demonstrate that those jobs could not be performed by an individual that needs to use a wheelchair in the limited circumstances that Karen D. testified she used one.  Karen D.'s representative did not develop the record to demonstrate that the pace limitations she might have with a cane would preclude work in the representative occupations.  Karen D. has also not developed her argument on appeal that her demonstrated limitations with ambulation conflict with the requirements of those jobs; she develops generally only that sedentary occupations require some ability to walk.  (*See* Filing No. 7 at 24.)  And again, no medical source of record has assessed specific functional limitations that conflict with the ALJ's RFC finding.  Regarding her ability to ambulate, Karen D. reported to her treating neurologist more than six months after her DLI that "[t]here has been less stability, but no falling, and she still feels comfortable using her left-handed cane to walk and no need to advance to a walker."  (Filing No. 5-18 at 9.)  The record does not demonstrate a significant conflict between the evidence and the ALJ's RFC finding.

Accordingly, the Court concludes that remand is not warranted based on the issues raised on appeal.

## V.    CONCLUSION

"The standard for disability claims under the Social Security Act is stringent."  *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010).  For the reasons stated above, the Court finds no legal basis to reverse the ALJ's decision.  The final decision of the Commissioner is **AFFIRMED**.  Karen D.'s appeal is **DISMISSED**.

**SO ORDERED.**

Date:  5/14/2020

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Kirsten Elaine Wold
HANKEY LAW OFFICE
kew@hankeylaw.com

Brian J. Alesia
OFFICE OF REGIONAL CHIEF COUNSEL FOR SOCIAL SECURITY
brian.alesia@ssa.gov

Lu Han
SOCIAL SECURITY ADMINISTRATION
lu.han@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov